IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATIE LAPP, | : | No. 3:25-CV-0243 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT | : | |
| OF CORRECTIONS, *et al.*, | : | |
| **Defendants** | : | |

**MEMORANDUM**

Plaintiff Katie Lapp initiated the above-captioned *pro se* action under 42

U.S.C. § 1983,[1] alleging that Pennsylvania Department of Corrections (DOC)

officials infringed her right to freely exercise her religion.  Upon statutorily

required screening, the court will dismiss in part Lapp's complaint pursuant to 28

U.S.C. § 1915A(b).

I.    BACKGROUND

During most times relevant to her complaint, Lapp was confined at the

State Correctional Institution in Muncy, Pennsylvania (SCI Muncy).  (Doc. 1 ¶¶

12-24).  She is currently incarcerated at SCI Cambridge Springs.  (See id. ¶ 3).

Lapp alleges that, according to her sincerely held religious beliefs, she must

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by
state officials.  The statute is not a source of substantive rights; it serves as a mechanism for
vindicating rights otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273,
284-85 (2002).

cover her hair at all times "in the sight of men," whether it is "in the form of a photo or physically[.]" (Id. ¶¶ 13, 20). Upon arrival at SCI Muncy on August 13, 2024, Lapp refused to have her inmate identification photograph taken with her hair uncovered, explaining to prison officials that it was against her religious beliefs. (Id. ¶¶ 12-13). According to Lapp, SCI Muncy officials refused to take her photo while wearing a head covering, basing their decision on DOC policy. (Id. ¶¶ 13-14).

Lapp asserts that she was taken to the Restricted Housing Unit (RHU) and was denied access to a head covering. (Id. ¶¶ 15-17). After being placed into a cell, Lapp used a towel to cover her hair but was then denied a lunch tray by Sergeant Tedesco for not being "properly dressed." (Id. ¶¶ 18-19). Lapp claims that on August 26, 2024, thirteen days later, she was again denied breakfast and lunch by Sergeant Tedesco and C.O. Holmes because she had her hair covered, despite telling the officers that they were violating her constitutional rights. (Id. ¶ 21).

Lapp further alleges that she sought a religious accommodation from Ulli Klemm, the DOC's Religious Services Administrator. (Id. ¶¶ 9, 22). On October 23, 2024, Klemm granted Lapp permission to wear authorized "headgear" at all times except when there was "a need to update photo identification." (Id. ¶ 22). Lapp appealed this decision, claiming that the DOC could not demonstrate a

2

compelling governmental interest in requiring inmates to be photographed without religious head coverings. (Id. ¶ 23). According to Lapp, Chief Grievance Officer Varner denied that appeal. (Id. ¶ 24).

Lapp sues the following defendants: the Pennsylvania Department of Corrections, Secretary of Corrections Laurel Harry, Sergeant Tedesco, C.O. Holmes, Religious Services Administrator Ulli Klemm, Chief Grievance Officer Varner, and unidentified SCI Muncy "Jane Doe" corrections officers. (See Doc. 1 ¶¶ 4-10). She sues all Defendants in their individual and official capacities. (Id. ¶ 11). Lapp seeks declaratory relief, injunctive relief, nominal damages, and punitive damages. (Id. ¶¶ 30-32). The specific injunctive relief she seeks is "an exemption from having [her] hair uncovered for photo identification update[s]." (Id. ¶ 31).

Lapp lodged her Section 1983 complaint in this court on February 10, 2025. (See generally Doc. 1). She was then ordered to pay the $9.26 initial partial filing fee required under 28 U.S.C. § 1915(b)(1)(A) and informed that screening of her case would not occur until the initial partial filing fee was submitted. (See Doc. 9). Lapp responded to that order, claiming that she did not have the money in her prison account to pay the initial partial filing fee.[2] (See Docs. 10, 11). Thus,

---

[2] It appears that shortly before filing the instant lawsuit, Lapp emptied her prison trust fund account through an $81.97 donation to "Andrew Wommack Ministries." (See Doc. 8 at 1).

the court now proceeds to screening under 28 U.S.C. § 1915A(a).  <u>See</u> 28

U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a

civil action or appealing a civil or criminal judgment for the reason that the

prisoner has no assets and no means by which to pay the initial partial filing

fee.").

## II.    STANDARD OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable,"

unrepresented prisoner complaints targeting governmental entities, officers, or

employees.  <u>See</u> 28 U.S.C. § 1915A(a).  One basis for dismissal at the screening

stage is if the complaint "fails to state a claim upon which relief may be

granted[.]"  <u>Id.</u> § 1915A(b)(1).  This language closely tracks Federal Rule of Civil

Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a

*pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they

utilize when resolving a motion to dismiss under Rule 12(b)(6).  <u>See</u> <u>Grayson v.

Mayview State Hosp.</u>, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); <u>O'Brien v.

U.S. Fed. Gov't</u>, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (*per curiam*)

(nonprecedential); <u>cf.</u> <u>Allah v. Seiverling</u>, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire

"whether a plaintiff will ultimately prevail but whether the claimant is entitled to

offer evidence to support the claims."  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236

4

(1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. See Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008). In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry. See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted). At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. Id. (quoting Iqbal, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an

entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Lapp proceeds *pro se*, her pleadings are to be liberally construed and her complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). This is particularly true when the *pro se* litigant, like Lapp, is incarcerated. See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.    DISCUSSION

Lapp asserts Section 1983 claims under the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc. The court will address, in turn, Lapp's multiple pleading deficiencies that require partial dismissal of her complaint.

### A.    Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); see also Ashcroft v. Iqbal, 556. U.S. 662, 676 (2009) (affirming same principle in Bivens context). Rather, a Section 1983 plaintiff must plausibly plead facts that

demonstrate the defendant's "personal involvement in the alleged misconduct."

Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020).  Personal involvement can

include direct wrongful conduct by a defendant, but it can also be demonstrated

through evidence of "personal direction" or "actual knowledge and

acquiescence"; however, such averments must be made with particularity.  Id.

(quoting Rode, 845 F.2d at 1207).  Furthermore, it is equally settled that

involvement in the post-incident grievance process alone does not give rise to

Section 1983 liability.  See id. (affirming dismissal of claims against prison

officials for lack of personal involvement when officials' "only involvement" was

"their review and denial of [plaintiff]'s grievance"); Lewis v. Wetzel, 153 F. Supp.

3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); Brooks v. Beard, 167 F. App'x

923, 925 (3d Cir. 2006) (nonprecedential); Alexander v. Gennarini, 144 F. App'x

924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims

against certain defendants were "properly dismissed" because the allegations

against them "merely assert their involvement in the post-incident grievance

process").

Lapp's individual capacity Section 1983 claims against Secretary Harry and

Chief Grievance Officer Varner must be dismissed for lack of personal

involvement.  Nowhere in Lapp's complaint does she claim that Secretary Harry

had any involvement in the application of the purported "no-head-covering-

during-inmate-photographs" policy or the specific events at SCI Muncy alleged in the complaint. See Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (holding that, because there was no evidence that Commissioner [now titled "Secretary"] of DOC "had any personal involvement in the application to plaintiffs of the challenged policies," individual capacity claims for damages were properly dismissed).

Chief Grievance Officer Varner's only involvement appears to be the denial of an administrative appeal regarding Lapp's religious accommodation request. Yet involvement in the post-incident grievance process does not plausibly allege personal involvement in a constitutional violation. Accordingly, the court must dismiss the individual capacity Section 1983 claims against Secretary Harry and Chief Grievance Officer Varner pursuant to 28 U.S.C. § 1915A(b)(1) for lack of personal involvement.

### B.    "Person" for Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by *a person* acting under color of state law." Rehberg v. Paulk, 566 U.S. 356, 361 (2012) (emphasis supplied) (citing Imbler v. Pachtman, 424 U.S. 409, 417 (1976) (citing 42 U.S.C. § 1983)). Only "persons" are subject to suit under Section 1983; state agencies

8

such as the DOC do not qualify.  See Will v. Mich. Dep't of State Police, 491 U.S.

58, 64-65, 71 (1989) (explaining that a state is not a "person" for Section 1983

purposes); Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (noting that a state

agency may not be sued under Section 1983 because it is not a "person"); Foye

v. Wexford Health Sources Inc., 675 F. App'x 210, 215 (3d Cir. 2017)

(nonprecedential) (dismissing Section 1983 claims against prison and

Department of Corrections because they "are not persons subject to suit under"

Section 1983).

 Lapp cannot sue the DOC under Section 1983 because the DOC is not a

"person" subject to Section 1983 liability.  See Fischer, 474 F.2d at 992; Foye,

675 F. App'x at 215.  Additionally, any claim against a state agency is akin to

suing the state itself, and such claims are generally barred by Eleventh

Amendment sovereign immunity.  See Harper v. Jeffries, 808 F.2d 281, 284 n.4

(3d Cir. 1986) (noting that any Section 1983 action by prisoner against

Pennsylvania Parole Board is barred by Eleventh Amendment); Laskaris v.

Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) ("The eleventh amendment's bar

[against civil rights suits in federal court targeting a state] extends to suits against

departments or agencies of the state having no existence apart from the state.");

Foye, 675 F. App'x at 215.  Accordingly, any Section 1983 claim against the

DOC will be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## C.    Official Capacity Claims

Lapp sues all prison-official Defendants in their individual and official capacities.  However, any official capacity claim seeking monetary damages from state officials is barred by Eleventh Amendment sovereign immunity. Additionally, injunctive relief is only available from appropriate Defendants.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.  U.S. CONST. amend. XI; Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-68 (1997); Hans v. Louisiana, 134 U.S. 1, 10 (1890).  This immunity from private suit extends to state agencies as well as state officials acting in their official capacity because such lawsuits are essentially civil actions "against the State itself."  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.  See 42 PA. CONS. STAT. ANN. § 8521(b); Downey v. Pa. Dep't of Corr., 968 F.3d 299, 310 (3d Cir. 2020); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).  There are two exceptions to the Eleventh Amendment's bar to

private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief." Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa., 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, Ex parte Young, 209 U.S. 123 (1908)).

Lapp's official capacity claims, to the extent they seek monetary damages, are barred by Eleventh Amendment sovereign immunity. Insofar as Lapp requests prospective injunctive relief (*i.e.*, being granted an exemption from having her hair uncovered for photo identification updates), her official capacity claims may go forward against the appropriate DOC officials: Secretary Harry and Religious Services Administrator Klemm. These two high-level officials are the only plausible named Defendants who could effectuate the injunctive relief that Lapp requests in her lawsuit. See Parkell v. Danberg, 833 F.3d 313, 332 (3d Cir. 2016) ("In seeking a prospective injunction against the implementation of an unconstitutional state policy, [a plaintiff] is required to name an official or officials who can appropriately respond to injunctive relief." (citation and internal quotation marks omitted)); see also Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011) (per curiam) (explaining that proper defendant for official capacity claim is the state official "responsible for ensuring that any injunctive relief is carried out").

All official capacity claims against other Defendants will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and (2).

### D.    First Amendment Retaliation

Lapp alleges that Sergeant Tedesco and C.O. Holmes denied her several meals because she was covering her hair with a towel.  These allegations do not sound in a violation of free expression; rather, they implicate retaliation for exercising constitutionally protected conduct.  Yet Lapp cannot plausibly state a First Amendment retaliation claim because she has not alleged (and cannot allege) actionable adverse conduct.

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system." Wisniewski v. Fisher, 857 F.3d 152, 156 (3d Cir. 2017) (quoting Newman v. Beard, 617 F.3d 775, 781 (3d Cir. 2010)).  To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. Id. (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001));

Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (quoting Rauser, 241 F.3d at 333).

The court assumes that Lapp was "engaged in constitutionally protected conduct" when she covered her hair with a towel pursuant to her religious beliefs. Lapp, however, has not plausibly alleged that she suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his or her First Amendment rights.

Lapp alleges that Sergeant Tedesco denied her a lunch tray on August 13, 2024, and that Sergeant Tedesco and C.O. Holmes denied her breakfast and lunch on August 26, thirteen days later. (See Doc. 1 ¶¶ 19, 21). Multiple courts, however, have repeatedly held that the denial of a meal (or several nonconsecutive meals) does not rise above the *de minimis* level to constitute an adverse action for a retaliation claim. See Romero v. Lann, 305 F. App'x 242, 243 (5th Cir. 2008) (nonprecedential) (denial of two meals over eight months was *de minimis* for retaliation claim); Ramey v. Marsh, No. 4:21-cv-01018, 2022 WL 363854, at *3 (M.D. Pa. Feb. 7, 2022) (withholding single meal does not qualify as adverse action for retaliation claim); Coit v. Luther, No. 1:19-cv-02036, 2021 WL 5792697, at *10 (M.D. Pa. Dec. 7, 2021) (explaining that "occasional denial of meals does not constitute sufficient adverse action" for retaliation claim and thus denial of one meal was *de minimis*); Daughtry v. Kauffman, No. 3:17-cv-

0442, 2021 WL 4502256, at *13 (M.D. Pa. Sep. 30, 2021) (denial of two meals

five days apart was *de minimis* and thus not an adverse action for First

Amendment retaliation claim); <u>Sears v. Mooney</u>, No. 1:17-cv-50, 2019 WL

6726839, at *8 (M.D. Pa. Dec. 11, 2019) (denial of one food tray did not rise to

level of adverse action); <u>Frazier v. Daniels</u>, No. 09-cv-3612, 2010 WL 2040763,

at *11 (E.D. Pa. May 20, 2010) (denial of two meals did not constitute adverse

action for retaliation claim).  Thus, Lapp's First Amendment retaliation claims

against Sergeant Tedesco and C.O. Holmes will be dismissed pursuant to

Section 1915A(b)(1).[3]

### E.    RLUIPA Claims

The court assumes, without deciding, that Lapp can plausibly state First

Amendment free exercise and RLUIPA claims against Religious Services

Administrator Klemm with respect to the denial of Lapp's request for an

exemption from uncovering her head during inmate identification photos.

---

[3] Lapp also appears to claim that several unidentified Jane Doe defendants violated her federal
rights by failing to provide her with a head covering when they transferred her to a cell in the
RHU on August 13, 2024.  (See Doc. 1 ¶¶ 15-17, 26).  This cursory, undeveloped claim does
not state a violation of federal law.  Lapp admits in her complaint that she was not granted an
accommodation request "to wear authorized headgear at all times" (except during photos) until
October 23, 2024.  (See id. ¶ 22).  Furthermore, Lapp does not assert that these Jane Doe
officials were involved in the alleged constitutional violation of requiring her to be photographed
without her head covering.  Accordingly, any Section 1983 claims targeting these unidentified
Jane Doe defendants will be dismissed pursuant to Section 1915A(b)(1).

However, any individual capacity RLUIPA claims—no matter whom they target—must be dismissed.  It is well settled that RLUIPA "does not permit" actions against government officials "in their individual capacities."  <u>Sharp v. Johnson</u>, 669 F.3d 144, 153, 154 (3d Cir. 2012).

Furthermore, Lapp's official capacity RLUIPA claims are limited to prospective equitable relief.  That is because, for RLUIPA claims against state officials in their official capacities, monetary damages are barred by Eleventh Amendment sovereign immunity.  <u>See</u> <u>id.</u> at 155 (explaining that states did not consent to waive sovereign immunity "with respect to RLUIPA suits for damages against State employees in their official capacities" (citing <u>Sossamon v. Texas</u>, 563 U.S. 277, 285-86, 288 (2011))).

Thus, Lapp's RLUIPA claims against Defendants are circumscribed by law to official capacity claims for prospective equitable relief only.  And, as explained in detail above, <u>see</u> <u>supra</u> Section III(C), those official capacity RLUIPA claims seeking injunctive relief are proper only as to Secretary Harry and Religious Services Administrator Klemm.

### F.    Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."  <u>Grayson</u>, 293 F.3d at 114.  The

claims being dismissed herein are not subject to amendment because they are legally, rather than factually, deficient. Thus, providing leave to amend would be futile.

This case, therefore, will proceed on the following Section 1983 causes of action: (1) an individual capacity First Amendment free exercise claim against Religious Services Administrator Klemm; (2) an official capacity First Amendment free exercise claim against Secretary Harry and Religious Services Administrator Klemm, with relief limited to prospective declaratory or injunctive relief; and (3) an official capacity RLUIPA claim against defendants Secretary Harry and Religious Services Administrator Klemm, with relief limited to prospective declaratory or injunctive relief.

## IV.    CONCLUSION

Based on the foregoing, the court will dismiss in part Lapp's complaint pursuant to 28 U.S.C. § 1915A(b), as more fully set forth herein. An appropriate Order follows.

Date: 6/10/25

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

16